Charles R. JENKINS and William E. Esham, Jr., Appellants,

v.

Hugh G. SMITH, C. Alexander Hewes, and Augmentation, Inc., Appellees.

No. 83–679.

District of Columbia Court of Appeals.

Reargued en banc Sept. 11, 1985.

Judgment Oct. 21, 1985.

Opinion Dec. 8, 1987.

Craig N. Goodrich, with whom Lee Calligaro, James C. Fontana, Washington, D.C., and Barry S. Landsberg, Los Angeles, Cal., were on brief, for appellants.

Hugh B. Gordon, with whom C. Alexander Hewes, Jr., Washington, D.C., was on brief, for appellees. William F. Causey, Rockville, Md., also entered an appearance for appellees.

Before PRYOR, Chief Judge, MACK, NEWMAN, FERREN, BELSON, TERRY, ROGERS, and STEADMAN, Associate Judges, and NEBEKER, Associate Judge, Retired.*

PER CURIAM:

This is an appeal from an order of the Superior Court denying a motion to dismiss a civil action on the ground of *forum non conveniens*. The case was originally argued before a division comprised of Judges Newman, Terry, and Rogers. Thereafter the court *sua sponte* ordered the case to be reheard en banc and requested counsel, in supplemental memoranda and at oral argument, to address the question of whether the holding in *Frost v. Peoples Drug Store, Inc.*, 327 A.2d 810, 812–813 (D.C.1974), should be overruled. That holding permits an interlocutory appeal to be taken from a trial court order denying a motion to dismiss on the ground of *forum non conveniens*.

In a per curiam opinion, *Jenkins v. Smith*, 499 A.2d 128 (D.C.1985) (en banc), this court unanimously affirmed the denial of the motion to dismiss. In addition, a majority of the court concluded that *Frost* should not be overruled and reaffirmed the holding in that case. Four judges dissent-

---

* Judge Nebeker was an Associate Judge of this court at the time of oral argument. His status changed to Associate Judge, Retired, on September 1, 1987.

ed from the latter ruling. The court said then that one or more opinions would be issued at a later date.

In part I of Judge Terry's opinion which follows, the court sets forth its reasons for affirming the order of the Superior Court from which this appeal is taken. In part II of his opinion, Judge Terry, joined by three other judges (a minority of the en banc court), dissents from the refusal to overrule *Frost.* Thus the per curiam opinion, 499 A.2d 128, and part I of Judge Terry's opinion, *infra,* together constitute the opinion of the court.

## I

TERRY, Associate Judge:

This action arose from the sale of a parcel of land in Ocean City, Maryland, to a limited partnership, several of whose members are parties to this appeal. Appellees, three limited partners, sued the three general partners, two of whom are appellants here,[1] for breaches of common-law and statutory fiduciary duty, misrepresentation, fraud, conversion, and conspiracy. In their complaint they alleged that, after they had invested in the partnership on the basis of representations that the property would cost $400,000, a corporation controlled by appellant Jenkins secretly purchased the property for $300,000 and resold it to the partnership, dividing the $100,000 profit among the three general partners. After we reversed the trial court's dismissal of the complaint for lack of personal jurisdiction, *Smith v. Jenkins,* 452 A.2d 333 (D.C.1982), appellants moved for dismissal on the ground of *forum non conveniens.* They now appeal from the denial of that motion. Finding no abuse of discretion by the trial court, we affirm its ruling.

### A. *The Pertinent Facts*

Although appellees are all residents of the Washington area, only Hugh Smith actually lives in the District of Columbia; Alexander Hewes resides in McLean, Virginia, and Augmentation, Inc., is a Maryland corporation with its headquarters in Silver Spring, Maryland. Both appellants are Maryland residents. The partnership was formed in Maryland to purchase and develop the Ocean City property.

Appellants asserted below that "virtually all" of the witnesses at trial would be residents of the Eastern Shore of Maryland, "beyond the compulsory process of the court."[2] They argued that Maryland law would govern the entire action because the partnership agreement stated that Maryland law would control any disputes arising from it, and that the District of Columbia had no interest in providing a forum for the litigants. Finally, they maintained that appellees' interests were already represented in a related Maryland lawsuit, in which their successor as general partner had filed a counterclaim against these appellants for breach of fiduciary duty, seeking to recover the same $100,000 profit involved here.[3]

Appellees disputed appellants' assertion concerning witness availability. They stated that all seven of their own witnesses had agreed to testify in the District of Columbia, and that only two were Maryland residents. They pointed out that the District of Columbia was the site of some of the alleged tortious conduct: co-defendant Bounds had entered the District to interest them in investing, and it was here that they purchased their shares and signed the partnership agreement. Thus they argued that, except for the counts alleging a breach of fiduciary duty, their claims would be governed by the law of the

---

1. The other general partner, Robert S. Bounds, was named as a defendant but was never served with process.

2. That portion of the state of Maryland lying east of Chesapeake Bay is known as the Eastern Shore. Under D.C.Code § 11–942(a) (1981), a subpoena issued by the Superior Court "may be served at any place within the District of Columbia, or at any place without the District of Columbia that is within twenty-five miles of the

place of the hearing or trial specified in the subpoena." Super.Ct.Civ.R. 45(e)(1) contains identical language. No point on the Eastern Shore is within twenty-five miles of the District of Columbia Courthouse or any other place where the Superior Court may lawfully sit.

3. That action was filed in the Circuit Court of Wicomico County, which sits in Ocean City.

District of Columbia, not Maryland. Appellees also questioned Maryland's availability as an alternative forum. They noted that they were not parties to the suit filed in Wicomico County, and suggested also that the new general partner might not have standing to assert his counterclaim. Further, they contended that Maryland's statute of limitations barred an action of their own there.[4]

The trial judge denied the motion to dismiss. He found that a Maryland court would enjoy no advantage over a District of Columbia court in procuring witnesses. Moreover, since some of the alleged torts took place here and one of the plaintiffs (appellee Smith) was a District resident, he held that it was "not unreasonable" for the District to bear the expense of adjudicating their rights.[5]

### B. The Applicable Law

■ Our starting point in any discussion of *forum non conveniens* in the District of Columbia is the governing statute. D.C. Code § 13–425 (1981) provides:

> When any District of Columbia court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss such civil action in whole or in part on any conditions that may be just.

Under this statute, it is up to the court initially to determine whether "in the interest of substantial justice" the case should be heard elsewhere. If it so determines, the court in its discretion may stay or dismiss the action. We have repeatedly held that trial court rulings on *forum non conveniens* motions are entitled to receive considerable deference from this court. We will not reverse such a ruling unless presented with clear evidence that the trial court abused its broad discretion. *E.g.,*

*Asch v. Taveres,* 467 A.2d 976, 978 (D.C. 1983); *Cockrell v. Cumberland Corp.,* 458 A.2d 716, 718 (D.C.1983); *Carr v. Bio-Medical Applications of Washington, Inc.,* 366 A.2d 1089, 1091–1092 (D.C.1976).

This deference, however, does not amount to *carte blanche.* Unlike our review of most acts of judicial discretion, *see Johnson v. United States,* 398 A.2d 354, 363–367 (D.C.1979), our review of rulings on *forum non conveniens* motions includes an independent evaluation of the "private" and "public" factors enumerated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). *See, e.g., Asch v. Taveres, supra,* 467 A.2d at 979; *Mobley v. Southern Ry.,* 418 A.2d 1044, 1048–1049 (D.C.1980); *Washington v. May Department Stores,* 388 A.2d 484, 487 (D.C.1978); *Carr v. Bio-Medical Applications of Washington, Inc., supra,* 366 A.2d at 1092–1093. The private factors include potential obstacles to a fair trial, including the relative ease of access to proof, the availability and cost of compulsory process, the enforceability of any judgment obtained, and evidence of vexatiousness or harassment. *Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 508, 67 S.Ct. at 843; *Carr v. Bio-Medical Applications of Washington, Inc., supra,* 366 A.2d at 1092. The public factors are those affecting the District's own interests, including the congestion of its court dockets with foreign litigation, the imposition of jury duty on District residents for litigation in which the District has no concern, and the inappropriateness of calling on District of Columbia courts to construe the law of another jurisdiction. *Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 508–509, 67 S.Ct. at 843; *Carr v. Bio-Medical Applications of Washington, Inc., supra,* 366 A.2d

---

4. At oral argument, counsel for appellants advised us that his clients were willing to waive this defense if appellees brought suit in Maryland. We express no opinion on whether the Maryland statute of limitations is a defense which, under Maryland law, may be waived. Nor do we consider whether the moving party's offer to waive an alternate forum's statute of limitations is a relevant factor in a trial court's decision to grant or deny a motion to dismiss on the ground of *forum non conveniens.*

5. The trial court also seemed to be somewhat persuaded by appellants' failure to raise the *forum non conveniens* issue in any meaningful way along with their motion to dismiss for lack of jurisdiction. While we agree that appellants should have raised the issue at that time, we cannot say that their failure to do so constituted a waiver. *See* 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURES § 3828 (1986).

at 1092; *cf. Kaiser–Georgetown Community Health Plan, Inc. v. Stutsman,* 491 A.2d 502, 509–510 (D.C.1985) (comparison of governmental interests may affect choice-of-law decision).

Another important factor, with ramifications both private and public, is the residence of the plaintiff. *See Washington v. May Department Stores, supra,* 388 A.2d at 486. In any case the plaintiff's choice of forum should ordinarily be honored. *Gulf Oil, supra,* 330 U.S. at 508, 67 S.Ct. at 843; *Asch v. Taveres, supra,* 467 A.2d at 978; *Washington v. May Department Stores, supra,* 388 A.2d at 486. When the plaintiff is a resident of this jurisdiction, the defendant who seeks dismissal faces a heavy task: "only under convincing circumstances … should a trial court in this jurisdiction dismiss on grounds of forum non conveniens a suit brought by a resident of the District of Columbia." *Washington v. May Department Stores, supra,* 388 A.2d at 487; *accord, Asch v. Taveres, supra,* 467 A.2d at 979.

It should come as no surprise, given the trial court's broad discretion, that only rarely have we reversed rulings either way on *forum non conveniens* motions, even though such rulings receive closer scrutiny than most exercises of trial court discretion. Indeed, only once in the last thirteen years, in *District-Realty Title Insurance Corp. v. Goodrich,* 328 A.2d 93 (D.C.1974), has this court reversed the denial of such a motion. The plaintiffs in that case were a class of Maryland holders of title insurance policies on their Maryland homes issued by the defendant, a Maryland corporation whose principal place of business was in the District of Columbia. Plaintiffs maintained that the defendant had overcharged them for their policies at its office in the District, making this the situs of the tort. This court held, however, that given the "critical connection" of the case with Maryland, the applicability of Maryland insurance law, the crowded court dockets in the District of Columbia, and the ease of access

to a forum in suburban Maryland, the trial court had abused its discretion in refusing to dismiss on the ground of *forum non conveniens.* Maryland, we held, was "the only proper forum." *Id.* at 95.

■ This case is similar to *District-Realty* in that many of its contacts are with Maryland. Both appellants are Maryland residents. They formed a limited partnership with appellees under Maryland law to buy Maryland real estate. The partnership's sole place of business is in Maryland. The partnership agreement provides that Maryland law shall apply to all disputes arising from it. But there are also striking differences between this case and *District-Realty.* One of the plaintiffs here is a District resident. One of the defendants entered the District to persuade the plaintiffs to become limited partners, and allegedly defrauded them here. The plaintiffs signed the partnership agreement and purchased their shares in the partnership here. Finally, the alternative forum in the case at bar is not a Maryland suburb of Washington, as it was in *District-Realty,* but rather Ocean City, which is 120 miles from the District of Columbia. A shift of forum would create significant inconvenience for at least two of the plaintiffs and several of their witnesses.[6] *District–Realty* therefore does not compel us to reverse the trial court's denial of the motion.

That the present case's contacts with Maryland do not warrant reversal is even clearer in light of *Asch v. Taveres, supra.* In *Asch,* an action for child support based on a separation agreement which the parties had signed while residents of Maryland, we upheld the trial court's refusal to dismiss on *forum non conveniens* grounds. By the time the action was filed, the plaintiff and her son had become District residents, and the defendant lived in Virginia. Following *Washington v. May Department Stores, supra,* we gave "considerable weight" to the fact that the plaintiff, as well as her son, was a District

---

6. Appellees' counsel asserted below that the two witnesses who were Maryland residents lived no more than a few miles from the District. Further, he told the court, without contradiction,

that another witness who now lives in Arizona had expressed a preference for testifying in Washington.

resident. *Asch, supra,* 467 A.2d at 979. Further, there was no reason to believe that procuring evidence and witnesses would be difficult, nor did we see any sign of harassment or vexatiousness. Considering the public factors, we acknowledged that Maryland law would govern any disputes arising from the agreement, but concluded that this did not require dismissal. "Our courts ... are not unfamiliar with the law of Maryland ... and there would appear to be no great difficulty in the application of that law to the particular agreement involved in this case." *Id.* (citations omitted). Finally, we held that "public policy ... would certainly favor the exercise of jurisdiction by [District of Columbia] courts in a case brought by a District of Columbia resident for the support of her resident minor child." *Id.*

The same considerations apply here. That one of the plaintiffs, appellee Smith, is a District of Columbia resident is significant. Obviously, for him and appellee Hewes, a resident of suburban McLean, Virginia, the District is a far more convenient forum than Wicomico County, Maryland, more than 100 miles away. The same is true for most of their witnesses. While a District of Columbia court could not compel testimony from some of the Maryland residents whom appellants might wish to call to the stand, a Maryland court would be able to compel the appearance of only two of appellees' witnesses. There is no indication from the record, apart from the empty assertions of appellants' counsel, that any evidence is accessible exclusively in Ocean City, nor is there any showing that appellees chose this forum to vex or harass appellants. Public considerations also weigh against a *forum non conveniens* dismissal. Certainly, the District of Columbia has a legitimate interest in protecting its residents from those who enter the District to commit a fraud. However crowded our dockets, it would not be a waste of judicial resources to try such a case here. The choice-of-law clause in the partnership agreement is unimportant. We are not persuaded that Maryland law would apply to Bounds' allegedly fraudulent representations in the District of Co-

lumbia; but even if it did (and we need not decide the point now), it is unlikely that Maryland law would be novel or excessively complicated.

Thus, far from establishing the "convincing circumstances" which might warrant dismissal, *Washington, supra,* 388 A.2d at 487, examination of the *Gulf Oil* factors compels our conclusion that the trial court was entirely correct in denying appellants' motion to dismiss. Whether the District of Columbia is the best forum for this litigation is not the issue; rather, we must determine whether the District has so little to do with this case that its courts should decline to hear it. In finding that private and public considerations justified the exercise of its jurisdiction over the case, the trial court acted within the discretion vested in it by statute and case law. We see no abuse of discretion in that ruling.

*Affirmed.*

FERREN, Associate Judge, with whom Associate Judge BELSON and Associate Judge NEBEKER, Retired, join, concurring:

I join in the per curiam opinion, reflecting the majority view at the time of the judgment in this case, *Jenkins v. Smith,* 499 A.2d 128 (D.C.1985) (per curiam) (en banc), that the holding in *Frost v. Peoples Drug Store, Inc.,* 327 A.2d 810 (D.C.1974), should remain the law of this jurisdiction. I also join in Part I of Judge Terry's opinion.

I write separately for one reason: to express my disagreement with Judge Terry's statement, in Part II, that to the extent the denial of a *forum non conveniens* motion is reversible error, "the error is surely remediable on appeal after a final judgment, just as the denial of a motion to dismiss on any other ground (*e.g.,* lack of personal or subject-matter jurisdiction) is remediable." *Post* at 1372. Once there has been a trial in an inconvenient forum, the inconvenience as such can never be remedied. In any event, I doubt that a reviewing court would reverse a meritorious decision and force a new trial simply

because a forum, having jurisdiction, had been inconvenient.

Perhaps inconvenience should not be a ground for dismissal, without prejudice, of a suit over which a court has personal and subject matter jurisdiction. But, as long as there is such a ground, I see only two choices: either say, straightforwardly, that there shall be no appellate remedy for an erroneous denial of such a motion—in effect, Judge Terry's and his colleagues' position—or preserve the right of appeal. I prefer the latter alternative.

## II

TERRY, Associate Judge, with whom Chief Judge PRYOR and Associate Judges NEWMAN and ROGERS join, dissenting in part:

I believe that the time has come for this court to overrule its holding in *Frost v. Peoples Drug Store, Inc.*, 327 A.2d 810, 812–813 (D.C.1974), that denials of *forum non conveniens* motions are immediately appealable as "final orders [or] judgments" within the meaning of D.C.Code § 11–721 (1981). In *Frost* we applied the rule of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), in which the Supreme Court held final and appealable a trial court's refusal to require plaintiffs to post security. The Court held in *Cohen* that the trial court's decision fell into "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, *too important to be denied review*, and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225 (emphasis added). Our reported decisions since *Frost* make plain that the "claims of right" in cases such as this are not too important to be denied immediate review; rather, they have generally been trivial claims which warrant neither our immediate scrutiny nor a lengthy interruption in the trial proceedings. Research discloses that in only one case since *Frost* has this court reversed the denial of a *forum non conveniens* motion: *District-Realty Title*

*Insurance Corp. v. Goodrich*, 328 A.2d 93 (D.C.1974). To the extent that the denial of such a motion is reversible error, the error is surely remediable on appeal after a final judgment, just as the denial of a motion to dismiss on any other ground (*e.g.*, lack of personal or subject-matter jurisdiction) is remediable.

The court's experience over the last thirteen years convinces me that we should overrule *Frost*. The fact that we have affirmed the order under review in every *Frost*-type appeal except one since *Frost* was decided demonstrates compellingly that the issues presented in such appeals do not meet the second part of the three-part test enunciated in *Cohen*: "too important to be denied review." I regret that a majority of my colleagues have not reached the same conclusion. I fear they have fallen prey to the temptation of which the Third Circuit wrote in *Bachowski v. Usery*, 545 F.2d 363 (3d Cir.1976):

> [I]t would seem to us to be a disservice to the Court, to litigants in general and to the idea of speedy justice if we were to succumb to enticing suggestions to abandon the deeply-held distaste for piecemeal litigation in every instance of temptation. Moreover, to find appealability in those close cases where the merits of the dispute may attract the deep interest of the court would lead, eventually, to a lack of principled adjudication or perhaps the ultimate devitalization of the finality rule as enacted by Congress.

*Id.* at 373–374, quoted with approval in *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 440, 105 S.Ct. 2757, 2766, 86 L.Ed. 2d 340 (1985). In this era of judicial overload, I lament the fact that the court has not seen fit to eliminate from its docket a class of cases that should never have found their way there in the first place.

I respectfully dissent.